JOHN KAISER *v.* THE CITY OF NEW ORLEANS.

The lessor has not the right to make any alteration in the thing let, during the continuance of the lease. In case of a breach of contract, by negligence or fraud of a party, no other sum can be allowed as damages than that which fully indemnifies the creditor.

The whole tendency of modern practice is to enlarge the admissibility of evidence, leaving the court to restrict its applicability.

APPEAL from the Fifth District Court of New Orleans, *Eggleston,* J. *C. Roselius* and *W. B. Koontz* for plaintiff. *J. J. Michel* for defendant and appellant.

ILSLEY, J. This action was brought in the Fifth District Court of New Orleans, to recover damages from the city for an alleged violation of a contract, entered into between the city and the plaintiff, by which the city transferred to him the right to collect the revenues of the city, accruing under its ordinance, from the meat market, situated in the Second District of the city, for one year, beginning on the 1st January and ending on the 31st December, 1859.

The city pleaded the general issue.

The obligations, rights and disabilities of the contracting parties are determined by Articles 2262, 2268 and 2670 of the Civil Code.

The plaintiff invokes the principle enunciated in Art. 2668, to this effect: *The lessor has no right to make any alteration in the thing, during the continuance of the lease,* whilst the defendant reposes on Arts. 2262 and 2670.

Upon the proper application of these articles to the facts involved in this case, depends the result at which we must arrive.

It is conceded by the defendant that changes and alterations in the construction of the stalls, tables, etc., were made by it, during the lease; but the city attempts to justify these changes, by referring to a state of things which had originally existed in the internal arrangement of the market. Its main defence is, that, when the plaintiff entered into the possession of the premises, the market was in a condition requiring various repairs; and it refers to its contract with Pelanne Brothers, who were charged with the execution of the work, to show that every care was taken by it to incommode the lessee as little as possible.

Assuming that all this is true, does it follow that the city has any legal right to make any alterations or changes in the thing leased ?

Marcadé, commenting with that ability which distinguishes all his productions, solves this question. He says, commenting on Art. 1723 of the Napoleon Code, which corresponds with Art. 2668 of our Code :

"Le bailleur ne peut, à moins que le preneur n'y consente, apporter aucun changement pendant la durée du bail à la forme de la chose louée, et on ne pourrait plus sous le Code dire comme Pothier (No. 75) qu'il y aurait exception à ce principe, s'il s'agissait d'un changement peu considérable, très-intéressant pour le propriétaire et dont celui-ci offrirait d'indemniser le locataire. Le locataire peut toujours exiger que la chose soit maintenue dans l'état où il l'a louée; car il se peut que ce soit précisément à cause de cet etat qu'il l'ait louée."

It would seem that this tribunal has seldom, if ever, had occasion to make application of Article 2668 of our Code; and, as a case very similar, in its features, to this one, has been adjudged by the Court of Cassation, involving the identical textual principle of law as it does, we adopt it, as conveying in clear terms, its applicability to the facts in that, and in the present case, presented. The case alluded to was submitted originally to the Cour Royal de Paris, by Laperrière C. Bertauld, and is thus reported in the Journal du Palais, 1844, vol. 1, p. 134:

<div style="text-align:right; float:right;">KAISER<br>v.<br>NEW ORLEANS.</div>

"En 1833, les sieurs Laperrière et Jarry devinrent locataires des vastes salles qui composent l'estaminet hollandais, au Palais Royal, à Paris, pour dix-sept ans, moyennant 9000 fr. par an.

En 1841, le sieur Bertauld, propriétaire de la maison, déclara aux sieurs Laperrière et Jarry, qu'il était dans la nécessité, pour le locataire d'une boutique au rez-de-chaussée, de donner à la cage de l'escalier la forme circulaire, au lieu de la forme carrée, et qu'il se croyait d'autant plus fondé à faire ce changement que dans le bail de 1831, les preneurs s'étaient obligés à supporter les réparations nécessaires."

Sieur Bertauld sustained his demand before the Cour Royale, but on appeal to the Court of Cassation the judgment was reversed, as appears by the final decree which is here copied *in extenso*.

" Considérant qu'aux termes des articles 1719 et 1723 C. Civ., le bailleur doit faire jouir paisiblement le preneur pendant la durée du bail, et qu'il ne peut changer la forme de la chose louée;

Considérant qu'il ne s'agit pas de réparations urgentes et nécessaires, à faire à l'immeuble loué à Lapellier, mais de travaux de constructions et de changements que le locataire n'est pas tenu de souffrir;

Considérant qu'il résulte du rapport d'expert dressé en vertu de l'ordonnance du référé, que les travaux projetés par Bertauld sont contraires aux droits des jouissances des locataires; que l'escalier dont il s'agit est une accessoire importante des lieux loués, surtout à raison de la profession exercée par Laperrière; que ces travaux qui auraient pour résultat de réduire de 75 centimètres la profondeur de l'escalier, seraient dans l'intérêt du propriétaire seul, et causeraient au locataire un préjudice considérable;

Que par conséquent c'est à tort que les premiers juges ont autorisé Bertauld à faire exécuter les travaux."

Another case, similar in its import, was finally decided in the same court in 1843. It was that of *Caisse d'Epargne de Paris* v. *C. Boudou Des vesvres*. See Journal du Palais for that year (1843), vol. 1, p. 343.

And in the Journal du Palais for 1856, vol. 2, p. 433, is reported another case, Lefebvre C. Gautherin, defining the meaning of the words "la forme de la chose " as not restricted to any change materially in the thing leased, " mais encore toutes modifications essentielles qui sans détruire la substance de la chose, en changent les conditions et la rendent impropre à l'usage auquel elle était destinée," wherein Gautherin, the lessee, recovered from his lessor heavy damages, for an unwarrantable interference by his lessor with his rights, and which damages were increased by the Court of Cassation, which held that " Considérant que les dommages intérêts alloués à Gautherin ne sont pas proportionnés au préjudice par lui éprouvé, et résultant soit des frais nécessités par son démé-

KAISER
*v.*
NEW ORLEANS.

nagement, soit de ceux auxquels a donné lieu l'appropriation d'un nouvel appartement, condamne Lefebvre ès nom à payer à Gautherin la somme de 5,000 fr. en sus des 1,000 fr. à lui alloués par le jugement."

In Gautherin's case, the change was not a material one, altering the substance of the thing, but imposing on him in violation of his contract and the law, neighboring tenants, whose occupation was incompatible with the peace and tranquility he sought in renting the premises from his lessor.

Some stress is laid upon the circumstance that, whilst the alterations and changes were being made by the city, there was no formal expostulation or remonstrance on the part of the plaintiff, and that the formal protest made by him was not until the 3d May, 1859, when the work was completed.

It is not urged, as an estoppel in bar, that the plaintiff made no formal opposition, but the fact is adverted to, we presume, as an excuse for the interference by the city with plaintiff's rights as lessee.

A case, bearing on the same subject, Delahante C. de Tilière, Journal du Palais, 1858, p. 36, is in point. It was therein held that " Le silence gardé par le locataire quand usant ou abusant de son droit de propriété, le bailleur a apporté des changements à la chose louée, emporte de sa part renonciation tacite au droit qui lui appartient d'exiger le maintien de cette chose dans son état primitif. Son droit se réduit alors à réclamer la résiliation de son bail ou des dommages intérêts." And this last is the remedy to which the plaintiffs have lawfully resorted.

In *Arrowsmith* v. *Gordon et al.*, 3 An. 105; *Porter* v. *Barrow*, Ib. 140 ; *Ryder* v. *Thayer*, Ib. 150; and *Gobet* v. *Municipality No.* 1 *and City of New Orleans*, 11 An. 300, the mode of assessing damages in cases like this is determined. In *Ryder* v. *Thayer*, Judge Eustis, the organ of the court, held : In case of a breach of contract by negligence or fraud of a party, no other sum can be allowed as damages than that which fully indemnifies the creditor. Beyond this, says the court, juries have no more right to exact a larger sum than they have to increase the amount due on a promissory note.

The plaintiff finds no difficulty in arriving at a definite result in this case, and concludes that the loss sustained by him exceeds considerably the amount claimed by him, *i. e.* twelve thousand dollars.

The defendant, on his part, contends that there is no sufficient and proper evidence before the court, to show that the revenues of the market were actually diminished after the making of the repairs in question; and the task devolves on this court to determine the nature and the extent of the defendant's liability, if any exists.

We have bestowed considerable care in the examination of the testimony, oral and documentary, adduced on the trial of this cause, and we are impressed with the idea that there was no necessity whatever to interfere with the arrangement of the stalls, which had always been kept in repair by, and adapted to the convenience and needful requirements of, the butchers who occupied them. This is well established by *Wagner, Fulton, Altmeyer, Wilson, Lord, Senatt, Barras* and *Culisto*, although the testimony of *Pilié* is at variance with it.

Some of these witnesses (and many others would testify to the same fact) paid the plaintiff one-half (or more) less than they had previously paid him; and one witness, *Lord,* says that he considers the difference of value of a stall, *before* and *after* the work, one-half. The average loss on each of the 204 stalls we compute to be forty cents per day; which, for sixty days, whilst the work was in progress, would amount to two hundred and four dollars, and, in the aggregate, to four thousand eight hundred and ninety-six dollars. After that period, it would not, we think, be reasonable nor equitable to compel the city to pay anything, as it was in the power of the occupants of the stalls to enlarge them, as they did afterwards, without opposition.

We find in the record a bill of exceptions, taken by the defendant, to the receiving as a witness for the plaintiff of one *Wagner,* to prove that he had sold meat outside of the market, whereby plaintiff had lost his dues or fees.

When defendant objected, on the ground of irrelevancy, because such an act was a violation of the city ordinances, for which a fine is imposed, and because the damage thereby was caused by the witness, and not by the defendant. The evidence was admissible, if the witness did not refuse to answer the question (see 9 La. 356); and it was immaterial to the defendant if he could not be answerable for the act of the witness. It was held, in *Lockhart* v. *Harrall,* 6 A. 538, that the whole tendency of modern practice is to enlarge the admissibility of evidence, leaving the court to restrict its applicability.

This court can only view the city as any other ordinary contracting party, and whilst due care will be taken to maintain its rights and prerogatives, so long as they are kept within legal bounds, it will not tolerate a disregard of the legal rights of others, who have paid for those rights a full equivalent.

It is therefore ordered, adjudged and decreed, that the judgment of the court below be annulled, avoided and reversed, and proceeding to give such judgment as should have been rendered by the said court, it is ordered, adjudged and decreed, that judgment be and it is hereby rendered in favor of the plaintiff, John Kaiser, and against the defendant, the city of New Orleans, for the sum of four thousand eight hundred any ninety-six dollars, with legal interest from judicial demand ; the costs of the court below to be paid by the appellant, and those of this court to be paid by the appellee.